UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

Case No. 1:25-cv-00339-MR-WCM

MEREDITH-ANN YATES and
KEVIN-WAYNE VANOVER,
    Plaintiffs,

v.

DUSTIN SMITH, in his official capacity as Sheriff of Cherokee County;
CAPTAIN DAVID WILLIAMS, individually and in his official capacity;
LIEUTENANT MITCH MORGAN, individually and in his official capacity;
DEPUTY JACOBS, individually;
DEPUTY HUNTER BURRELL, individually;
DEPUTY DELY, individually;
THERESA CREASMAN, individually and in her official capacity as
Cherokee County 911 Communications Manager;
JENNY WHITESIDE, United States Probation Officer, individually and
in her official capacity for purposes of § 504 of the Rehabilitation Act,
    Defendants.

_____/

FILED
ASHEVILLE, NC

DEC 15 2025

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

## II. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the United States Constitution, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and § 504 of the Rehabilitation Act.

2. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs allege the deprivation of constitutional rights under color of state law.

3. To the extent required, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over claims arising from the same case or controversy as the federal claims.

4. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred in Cherokee County, North Carolina.

## III. PARTIES

PLAINTIFFS

5. Plaintiff Meredith-Ann Yates is an adult resident of North Carolina. At all times relevant to the events giving rise to this action, Plaintiff Yates resided in Cherokee County, North Carolina. Plaintiff Yates was subject to federal supervision until approximately July 2024, after which no probationary or supervisory authority existed over her.

6. Plaintiff Kevin-Wayne Vanover is an adult resident of North Carolina. At all times relevant to the events giving rise to this action, Plaintiff Vanover resided with Plaintiff Yates in Cherokee County. Plaintiff Vanover has a diagnosed disability, Chronic Post-Traumatic Stress Disorder (CPTSD). Following the enforcement actions described herein, Plaintiff Vanover was held in custody for approximately seven months, until his release in or about December 2024.

## IV. FACTUAL ALLEGATIONS

### A. BACKGROUND AND DISABILITY DISCLOSURE

7. Plaintiff Kevin-Wayne Vanover has a diagnosed disability, Complex Post-Traumatic Stress Disorder ("CPTSD"), which substantially limits major life activities including stress tolerance, sleep, concentration, and physiological response to confrontation.

8. Prior to the events giving rise to this action, Plaintiffs disclosed Plaintiff Vanover's CPTSD to CCSO personnel and other government actors and explained that heightened law-enforcement posture, crowding, and confrontational interactions exacerbate his symptoms.

9. Despite this disclosure, Plaintiffs were repeatedly subjected to escalating law-enforcement responses and intelligence-driven classifications that failed to account for disability-related limitations.

### B. SBI/NCISAAC INTELLIGENCE REQUEST AND DISSEMINATION

10. On or about May 23, 2023, Defendant Captain David Williams requested that the North Carolina State Bureau of Investigation and the North Carolina Information Sharing and Analysis Center ("SBI/NCISAAC") conduct an intelligence assessment concerning Plaintiffs.

11. Plaintiffs were not notified of the request, were not given an opportunity to provide information, and were not informed of the resulting assessment.

12. The resulting SBI/NCISAAC bulletin characterized Plaintiffs as dangerous, associated them with "Sovereign Citizen" ideology, and instructed officers to "approach with extreme caution," despite the absence of any violent history or criminal conduct.

13. The bulletin relied on decontextualized expressive activity, lawful recordings, and prior complaints made by Plaintiffs, and did not reflect verified criminal behavior.

14. The SBI/NCISAAC bulletin was disseminated within CCSO and to other agencies, where it was treated as authoritative intelligence and used to shape officer posture and decision-making.

C. NCIC AND DISPATCH-LEVEL DISSEMINATION (CREASMAN)

15. Defendant Theresa Creasman, acting as Cherokee County 911 Communications Manager, received, accessed, or was informed of the disputed intelligence concerning Plaintiff Vanover.

16. Defendant Creasman disseminated false or disputed NCIC and intelligence-based information concerning Plaintiff Vanover through internal communications, including emails and CAD-related entries, to influence how emergency calls and law-enforcement responses involving Plaintiffs were handled.

17. On a recorded call, Defendant Creasman instructed Plaintiff Vanover not to call 911 again, despite his need for emergency services, and warned that further calls could result in adverse action.

18. In a separate incident, Defendant Creasman documented similar restrictions in an internal CAD entry, again indicating that emergency services should not be used by Plaintiff Vanover.

19. These actions restricted Plaintiffs' access to emergency services and were taken without notice, lawful justification, or reasonable accommodation for Plaintiff Vanover's disability.

20. In or about 2025, Defendant Creasman further acted to block or interfere with Plaintiff Vanover's participation in the volunteer fire department, excluding him from a public safety program based on the same disputed intelligence narrative.

D. MAGISTRATE POSTELL INCIDENT

21. In June 2023, Plaintiffs appeared at the Cherokee County Magistrate's Office to file criminal charges against private individuals. Plaintiffs disclosed Plaintiff Vanover's disability and requested calm communication and reduced confrontation.

22. Defendant Magistrate Postell declined to accept the filing, provided no alternative procedure, and ordered Plaintiffs to leave the office.

23. Immediately following this denial of access to process, Plaintiff Vanover experienced a CPTSD-related episode requiring emergency medical services.

24. Multiple CCSO deputies responded, positioned themselves around Plaintiffs, and did not modify their conduct to accommodate the disclosed disability.

25. Plaintiffs later learned that CCSO deputies were acting under the SBI/NCISAAC intelligence

bulletin during this incident.

E. JULY 31, 2023 HEARING AND COURTROOM ESCALATION

26. On July 31, 2023, a civil hearing involving Plaintiffs was held in Cherokee County.

27. Prior to the hearing, CCSO supervisory personnel communicated with court staff regarding security posture. Plaintiffs were not notified of these communications.

28. Plaintiff Vanover again disclosed his disability at the hearing and requested reduced officer presence.

29. Despite this disclosure, a significant number of uniformed CCSO deputies were present in the small courtroom, creating an intimidating environment.

30. Plaintiffs later obtained an audio recording of the hearing that contained omissions, including the period during which the presiding judge referenced communications with CCSO.

F. ESCALATION, SUPERVISION, AND FALSE STATEMENTS (WHITESIDE)

31. Defendant Jenny Whiteside received the SBI/NCISAAC bulletin and incorporated its contents into federal supervision assessments despite having independent information contradicting the threat classification.

32. For approximately two years prior to 2024, Plaintiffs provided Defendant Whiteside with repeated written, recorded, and in-person notifications disputing CCSO's reports and the accuracy of the intelligence being relied upon.

33. On or about May 23, 2024, Defendant Whiteside submitted an addendum in federal supervision proceedings stating that Plaintiffs possessed a "machinegun" and describing conduct Plaintiffs disputed.

34. Defendant Whiteside informed Plaintiff Yates prior to that filing that she would not be arrested.

G. ARRESTS, POST-DISMISSAL DETENTION, AND CUSTODY

35. On or about May 21, 2024, Plaintiffs were arrested.

36. The charge against Plaintiff Yates was dismissed on or about May 22, 2024.

37. Despite dismissal, Plaintiff Yates remained restrained, transported, and detained for a period without lawful authority.

38. Plaintiff Yates's federal supervision concluded in or about July 2024. After that date, no probationary or supervisory authority existed to justify restraint, transport, or enforcement actions taken against her.

39. Plaintiff Vanover remained in custody for approximately seven months following these events, until his release in or about December 2024.

H. TRESPASS ENFORCEMENT AND LOSS OF HOUSING

40. Following the dissemination of disputed intelligence, CCSO personnel issued or enforced trespass directives against Plaintiffs based on statements Plaintiffs disputed and without independent verification.

41. Plaintiffs possessed lawful dwelling space, personal property, and improvements at the residence at the time these directives were enforced.

42. Plaintiffs were ordered to leave immediately and were not provided notice or an opportunity to secure their belongings.

43. Plaintiffs became temporarily homeless and were unable to recover property despite requests for assistance.

44. Plaintiffs' property was subsequently removed, damaged, or destroyed.

I. CONTINUING HARM AND FORESEEABILITY

45. The intelligence misclassification, NCIC dissemination, dispatch-level restrictions, courtroom escalation, false supervision statements, unlawful detention, and trespass enforcement occurred as part of a continuous and interrelated course of conduct.

46. Defendants acted with knowledge of Plaintiff Vanover's disability and of Plaintiffs' repeated disputes of the intelligence relied upon.

47. Plaintiffs suffered loss of liberty, loss of housing access, exclusion from emergency and public-safety services, disability-related harm, and foreseeable risk of physical and psychological injury as a result of Defendants' actions.

V. CLAIMS FOR RELIEF

COUNT I — FOURTH AMENDMENT
(Unlawful Seizure and Continued Detention)
(Against Defendants Williams, Mitch Morgan, Jacobs, Burrell, Dely, and
Jenny Whiteside, in their individual capacities)

48. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

49. Plaintiffs were seized within the meaning of the Fourth Amendment when they were arrested on or about May 21, 2024, based on intelligence and statements that Plaintiffs had disputed and that lacked probable cause.

50. Defendant Jenny Whiteside submitted or relied upon materially false or misleading information, including the allegation that Plaintiffs possessed a "machinegun," which was incorporated into enforcement decisions.

51. CCSO deputies, including Defendants Burrell, Dely, Jacobs, and Mitch Morgan, relied on disputed intelligence classifications and false statements when initiating and executing enforcement actions.

52. After dismissal of the charge against Plaintiff Yates on or about May 22, 2024, Defendants continued to restrain, transport, and detain her without lawful authority.

53. Plaintiff Yates's federal supervision ended in or about July 2024. After that date, no probationary or supervisory authority existed to justify any restraint, monitoring, or enforcement action against her.

54. Plaintiff Vanover's continued custody for approximately seven months was a foreseeable result of the same unlawful intelligence-driven actions.

55. Defendants' actions constituted unreasonable seizures in violation of the Fourth Amendment.


COUNT II — FOURTEENTH AMENDMENT
(Procedural Due Process)
(Against Defendants Smith (official capacity), Williams, Mitch Morgan, Creasman, and Jenny Whiteside)

56. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

57. Plaintiffs possessed protected liberty and property interests in freedom from restraint, housing access, emergency services, and personal property.

58. Defendants deprived Plaintiffs of these interests without constitutionally required process, including by:
   a. refusing to accept criminal complaints,
   b. restricting access to emergency services,
   c. enforcing trespass directives without notice or hearing,
   d. continuing detention after dismissal of charges, and

e. relying on disputed intelligence without verification.

59. No meaningful opportunity to be heard was provided before or after these deprivations.

60. Plaintiffs suffered loss of liberty, loss of housing access, and loss of property without due process of law.


COUNT III — FOURTEENTH AMENDMENT
(State-Created Danger)
(Against Defendants Smith (official capacity), Williams, Mitch Morgan,
Creasman, and Jenny Whiteside)

61. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

62. Defendants affirmatively created and increased danger to Plaintiffs by disseminating and acting upon disputed intelligence classifications, escalating enforcement posture, restricting access to emergency services, and placing Plaintiff Vanover into custodial environments known to present heightened risk.

63. Defendants acted with knowledge of Plaintiff Vanover's disability and of the foreseeable harm that escalated law-enforcement and detention conditions would cause.

64. Plaintiff Vanover's extended custody and the deprivation of emergency access were foreseeable consequences of Defendants' actions.

65. Defendants' conduct shocks the conscience and violated Plaintiffs' substantive due process rights.


COUNT IV — FIRST AMENDMENT
(Retaliation)
(Against Defendants Williams, Mitch Morgan, Jacobs, Creasman, and
Jenny Whiteside, in their individual capacities)

66. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

67. Plaintiffs engaged in protected First Amendment activity, including recording law-enforcement interactions, filing complaints, attempting to initiate criminal process, contacting emergency services, and reporting misconduct to governmental agencies.

68. After Plaintiffs engaged in this protected activity, Defendants undertook adverse actions, including:
    a. escalating enforcement posture,

    b. disseminating disputed intelligence,
    c. restricting access to 911 services,
    d. excluding Plaintiff Vanover from a public safety volunteer program,
    e. initiating arrests and enforcement actions, and
    f. continuing detention after dismissal of charges.

69. These actions were substantially motivated by Plaintiffs' protected conduct and would deter a person of ordinary firmness from exercising First Amendment rights.

70. Plaintiffs suffered loss of liberty, loss of housing access, and other concrete harms as a result.

## COUNT V — FOURTEENTH AMENDMENT
(Equal Protection – Class of One)
(Against Defendants Smith (official capacity), Creasman, and Jenny Whiteside)

71. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

72. Plaintiffs were intentionally treated differently from similarly situated individuals, including being subjected to heightened enforcement, restricted emergency access, and exclusion from public programs, without any rational basis.

73. Defendants' differential treatment was based on disputed intelligence classifications and retaliatory animus rather than legitimate governmental objectives.

74. Plaintiffs suffered liberty and property harms as a result of this unequal treatment.

## COUNT VI — AMERICANS WITH DISABILITIES ACT
(Title II – Failure to Accommodate)
(Against Defendants Smith and Creasman, in their official capacities)

75. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

76. Plaintiff Vanover is a qualified individual with a disability within the meaning of the ADA.

77. Defendants Smith and Creasman, as officials of public entities, had actual knowledge of Plaintiff Vanover's disability and its functional limitations.

78. Plaintiffs requested reasonable modifications to law-enforcement, courtroom, and emergency service interactions.

79. Emergency communications and public safety dispatch services constitute programs and services of a public entity within the meaning of Title II of the ADA.

80. Defendants failed to provide reasonable accommodations and instead maintained or escalated conditions that denied Plaintiff Vanover meaningful access to public services, including emergency communications and public safety programs.

81. Defendants' actions constituted discrimination in violation of Title II of the ADA.


COUNT VII — REHABILITATION ACT § 504
(Against Defendant Jenny Whiteside, in her official capacity)

82. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

83. Defendant Jenny Whiteside participated in or administered federally funded programs or activities.

84. Plaintiff Vanover disclosed his disability and requested reasonable modifications in supervision-related decisions.

85. Defendant Jenny Whiteside failed to provide reasonable accommodations despite notice of disability-related limitations.

86. Plaintiffs suffered loss of liberty and access-related harms as a result of this discrimination.


COUNT VIII — MUNICIPAL LIABILITY
(Monell — Policy, Custom, or Practice)
(Against Defendant Smith, in his official capacity)

87. Plaintiffs reallege and incorporate by reference ¶¶ 7–47.

88. The constitutional violations described herein were caused by policies, customs, or practices of Cherokee County and CCSO, including:
    a. reliance on unverified intelligence classifications,
    b. dissemination of disputed NCIC information,
    c. escalation of enforcement without verification,
    d. failure to accommodate known disabilities, and
    e. tolerance of retaliatory conduct across departments.

89. These practices occurred across multiple encounters over an extended period and were carried out or ratified by supervisory personnel, including the Sheriff, reflecting a custom attributable to the County's final policymakers.

90. These policies and customs were the moving force behind the deprivation of Plaintiffs' constitutional and statutory rights.

## VI. PRAYER FOR RELIEF

91. WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

92. Declaratory Relief. A declaration that Defendants' actions violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act, and § 504 of the Rehabilitation Act.

93. Injunctive Relief. An order requiring correction, amendment, or removal of disputed or inaccurate intelligence, NCIC-related entries, dispatch directives, or related records concerning Plaintiffs that were relied upon by Defendants.

94. Injunctive Relief. An order prohibiting further reliance on disputed intelligence or classifications in law-enforcement, supervision, detention, emergency-services, or judicial decisions involving Plaintiffs.

95. Injunctive Relief. An order requiring Defendants, in their official capacities, to implement ADA-compliant policies, training, and reasonable accommodations for interactions with individuals with disabilities, including access to emergency services and public safety programs.

96. Compensatory Damages. An award of compensatory damages in an amount to be determined at trial for Plaintiffs' losses, including loss of liberty, loss of housing access, loss and damage to property, emotional distress, physical injury, psychological injury, and other harms proximately caused by Defendants' conduct.

97. Punitive Damages. An award of punitive damages against Defendants sued in their individual capacities, to the extent permitted by law, for conduct that was willful, malicious, or in reckless disregard of Plaintiffs' federally protected rights.

98. Costs and Fees. An award of costs pursuant to 42 U.S.C. § 1988, Title II of the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and other applicable statutes.

99. Other Relief. Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

100. Plaintiffs demand a trial by jury on all issues so triable.

VIII. SIGNATURE BLOCK

101. Dated: _____12/12_____, 2025

/s/ Meredith-Ann Yates
Meredith-Ann Yates, Pro Se
P.O. Box 528
Marble, NC 28905

/s/ Kevin-Wayne Vanover
Kevin-Wayne Vanover, Pro Se
P.O. Box 528
Marble, NC 28905

*Meredith Ann Yates* (signature)

*Kevin Vanover* (signature)